## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| ELIZABETH CLARK, individually and on behalf of all others similarly situated, ) ) ) | |
| Plaintiff, ) ) | No. 15 C 2725 |
| v. ) ) | Judge Jorge L. Alonso |
| BUMBO INTERNATIONAL TRUST, ) ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

This is a putative class action against Bumbo International Trust ("Bumbo") for statutory consumer fraud and unjust enrichment. Before the Court are two motions. For the reasons explained below, plaintiff's motion for class certification is denied, and defendant's motion for leave to file a surreply is granted.

### BACKGROUND

Plaintiff, Elizabeth Clark, an Illinois citizen, alleges that Bumbo deceptively marketed and advertised its Bumbo floor seat for babies (the "Bumbo Seat")[1] by making the following representation on its website during the proposed class period of March 30, 2012 through March 30, 2015:

> The floor seat stabilizes the child into slight hip flexion, placing the pelvis in a slight anterior pelvic tilt which facilitates lumbar extension. This action, combined with the gentle curve of the seat back that matches the natural curve of the rib cage, facilitates the baby around the lower ribs and trunk for stabilization. The Seat allows for active practice of the head and postural trunk control. It also allows a child the pelvic stability needed to get the hands into the mid line for play. Upright positioning facilitates an improved visual field of the environment,

---

[1] Plaintiff bought a Bumbo seat for her child in January 2014.

> improved respirations and breath control, assists a baby who needs to be upright after feeding due to reflux and many other benefits.

(ECF No. 69, Stipulated Facts Regarding Class Certification ¶ 10.) The Court will follow the parties' lead and refer to this representation as the "Quote." Plaintiff says that the Quote is false and misleading because the Bumbo Seat prevents babies from engaging in natural movements necessary for their development; does not allow achievement of "active control"; does not allow room to build trunk control or pelvic stability, due to the seat's "locked-in nature"; does not allow for muscle activation or joint movement; wedges a child deep in the seat with the child's legs positioned at a higher angle than the child's pelvis; prevents natural weight-bearing from occurring; and interferes with important and natural progression of childhood development. (ECF No. 75, Pl.'s Mem. Supp. Class Certification at 3.) According to plaintiff, Bumbo published the Quote on its website "to induce parents of young children to falsely believe that the Bumbo Floor Seat provided their children with numerous developmental and anatomical benefits," and "[i]nstilling this false belief amongst consumers fueled and maximized sales." (*Id.* at 4.)[2]

Plaintiff asserts that Bumbo violated the statutory consumer-fraud laws and unjust enrichment laws of the fifty states and the District of Columbia. She seeks compensatory and punitive damages, declaratory and injunctive relief, restitution, disgorgement, and attorneys' fees and costs.

---

[2]In her second amended class action complaint, plaintiff also alleges that Bumbo misrepresented on its packaging that the Bumbo Seat was "the ultimate infant seat" and made several other misrepresentations and omissions on its website. (ECF No. 21, Second Am. Nationwide Class Action Compl. ¶¶ 60-78.) But, as Bumbo points out in its response, plaintiff in her motion for class certification does not rely on any argument that statements on packaging or statements on Bumbo's website, other than the Quote, were deceptive.

**DISCUSSION**

Plaintiff seeks to represent a nationwide class of "[a]ll consumers in each of the 50 states and the District of Columbia who visited www.bumbo.com and subsequently purchased the Bumbo Floor Seat within the applicable statute of limitations of the respective Class States, for personal use until the date Defendant removed the quote from www.bumbo.com." (Pl.'s Mem. Supp. Class Certification at 4.) Alternatively, plaintiff seeks to represent a multi-state class of "[a]ll consumers in Illinois and states with similar laws,"[3] or an Illinois-only class of "[a]ll Illinois residents," who did the same. (*Id.* at 4-5.)

"A district court may certify a case for class-action treatment only if it satisfies the four requirements of Federal Rule of Civil Procedure 23(a)—numerosity, commonality, typicality, and adequacy of representation—and one of the conditions of Rule 23(b)." *McCaster v. Darden Rests., Inc.*, 845 F.3d 794, 800 (7th Cir. 2017) (quotation marks and citation omitted). Plaintiff seeks certification pursuant to Rule 23(b)(2), which requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole," as well as Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members" and that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The Seventh Circuit has also "long recognized an implicit requirement under Rule 23 that a class

---

[3]After this phrase, plaintiff inserts a footnote and states therein: "The Class States, which are those with similar consumer-fraud laws under the facts of this case, include: California; Florida; Illinois; Massachusetts; Michigan; Minnesota; Missouri; New Jersey; New York; and Washington." (Pl.'s Mem. Supp. Class Certification at 4 n.5 (citations omitted).) It is not clear whether this list is exclusive.

3

must be defined clearly and that membership be defined by objective criteria . . . ." *Mullins v. Direct Dig., LLC*, 795 F.3d 654, 657 (7th Cir. 2015).

Plaintiff has the burden of showing by a preponderance of evidence that the proposed class satisfies the Rule 23 requirements. *See Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012). The Rule "does not set forth a mere pleading standard"; rather, the party seeking class certification must demonstrate the requirements "through evidentiary proof." *Comcast Corp. v. Behrend*, 569 U.S. 27, 133 S. Ct. 1426, 1432 (2013); *see also Kleen Prods. LLC v. Int'l Paper Co.*, 831 F.3d 919, 922 (7th Cir. 2016). "Such proof might include, for example, survey or other evidence suggesting the relevant common traits of the class members, expert testimony supporting the classwide allegations, or analysis of the relative costs of prosecuting the class and individual issues in the case." *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 761 (7th Cir. 2014). "Class certification is appropriate only if, 'after a rigorous analysis,' the trial court is satisfied that the requirements of Rule 23 have been met." *Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481, 493 (7th Cir. 2012) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011)). "'Frequently, that rigorous analysis will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped.'" *Id.* (quoting *Wal-Mart*, 564 U.S. at 351). "District courts have broad discretion to determine whether certification of a class-action lawsuit is appropriate." *Mulvania v. Sheriff of Rock Island Cty.*, 850 F.3d 849, 859 (7th Cir. 2017) (internal quotation marks and citation omitted).

**A.     Ascertainability and Overbreadth**

The Seventh Circuit observed in *Mullins* that courts have sometimes used the term "ascertainability" to refer to Rule 23's implicit requirement that a class be defined clearly and by objective criteria. 795 F.3d at 657. There are "three common problems that have caused

plaintiffs to flunk this requirement": 1) the class is not clearly defined; 2) the class is defined by subjective criteria, such as by a person's state of mind; and 3) the class is defined in terms of success on the merits (a so-called "fail-safe" class). *Id.* at 659-60. In *Mullins*, the Seventh Circuit declined to impose a "heightened" ascertainability requirement that a plaintiff prove at the certification stage that there is a "reliable and administratively feasible" way to identify all who fall within the class definition. *Id.* at 657-63.

Bumbo contends that plaintiff's proposed classes are overbroad because they include individuals who could not have been deceived and thus have no grievance under the Illinois Consumer Fraud Act ("ICFA").[4] Bumbo first notes that this is not a case where the alleged misrepresentation could be found on the product packaging, but on a page of Bumbo's website. It submits evidence that the Quote did not appear on the home page of that website, but only on a portion of the "Products" page of the website; a viewer would have had to scroll down on that page or click a link to the Bumbo Seat page in order to have seen the Quote. Bumbo argues that because plaintiff's class definitions require only that a putative class member have visited Bumbo's website, but not necessarily have seen the Quote, the definitions impermissibly include purchasers who were never exposed to the alleged deception.

An overbroad class definition can violate the definiteness requirement because it "include[s] individuals who are without standing to maintain the action on their own behalf." *Duffin v. Exelon Corp.*, No. 06 C 1382, 2007 WL 845336, at *3 (N.D. Ill. Mar. 19, 2007) (internal quotation marks and citation omitted); *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514

---

[4]Defendant argues that the ICFA, 815 ILCS 505/1 *et seq.*, and not the other state statutes listed in the complaint, governs plaintiff's consumer-fraud claim. Plaintiff does not take issue with that assertion, and indeed refers in her reply brief to "Plaintiff's ICFA claim." (ECF No. 89, Pl.'s Reply at 9.)

5

(7th Cir. 2006) (affirming the district court's ruling that the proposed class was not sufficiently definite, and stating that the class "could include millions who were not deceived and thus have no grievance under the ICFA"); *see also Messner*, 669 F.3d at 824 ("If . . . a class is defined so broadly as to include a great number of members who for some reason could not have been harmed by the defendant's allegedly unlawful conduct, the class is defined too broadly to permit certification.").

Plaintiff asserts that the proposed classes are not overbroad because they "only include individuals who were exposed to the Quote (by visiting www.bumbo.com) and subsequently purchased the Bumbo Floor Seat." (Pl.'s Reply at 2-3.) Plaintiff cites the parties' "binding and conclusive stipulation," which, according to plaintiff, "unequivocally states the Quote appeared on www.bumbo.com."[5] (*Id.* at 3.) Plaintiff does not, however, argue or submit any evidence that the Quote appeared on the home page of defendant's website, and the Court rejects plaintiff's mischaracterization of the parties' stipulation, which states that the Quote "appeared on www.bumbo.com, *a website* operated and maintained by Defendant." (Stipulated Facts Regarding Class Certification ¶ 10 (emphasis added).)[6] The parties did not stipulate that the Quote appeared on the home page of the website, nor did they stipulate where the Quote appeared on the website. The undisputed evidence is that a visitor to www.bumbo.com would

---

[5] Bumbo seeks leave to file a surreply that responds to this argument (as well as an argument regarding numerosity that plaintiff raises for the first time in her reply brief and which the Court need not discuss). Because the surreply is brief, confined to the two discrete issues, and responds appropriately to the reply, the Court grants Bumbo's motion for leave to file the surreply.

[6] Plaintiff makes this argument despite acknowledging in her opening brief that "www.bumbo.com's 'products page' . . . contained the Quote" and basing her discussion of numerosity on the number of visitors to Bumbo's Products page, not its home page. (Pl.'s Mem. Supp. Class Certification at 6-7.)

6

not necessarily have seen the Quote; rather, the visitor would have had to navigate to that portion of the Products web page. Therefore, plaintiff's class definitions are overbroad because they require merely that a class member have visited the website, not a specific web page that contained the Quote.

In *Messner*, the Seventh Circuit stated that "a class should not be certified if it is apparent that it contains a great many persons who have suffered no injury at the hands of the defendant." 669 F.3d at 825.[7] "There is no precise measure for 'a great many.' Such determinations are a matter of degree, and will turn on the facts as they appear from case to case." *Id.* Here, it appears from the evidence that there is a basis to believe that plaintiff's proposed classes contain "a great many" persons who could not have been harmed by defendant's alleged misrepresentations. As discussed below in the context of numerosity, Bumbo produced data on the number of visitors to its website and to its Products page during the relevant period. Because of the way in which the data was maintained and produced, the Court is unable to quantify with precision what percentage of website visitors from the United States navigated to the Products page (let alone navigated to the portion of the page that contained the Quote). But the Court can determine that there were hundreds of thousands fewer visits to the Products page than to the website generally, (ECF No. 81), and a common-sense presumption is that only a subset of that subset of visitors actually viewed the Quote. Plaintiff offers no evidence to the contrary. Accordingly, the Court will not certify any of plaintiff's proposed classes.

---

[7]The proper focus is on class members who *could not* have been harmed, as distinct from those who *were not* harmed. 669 F.3d at 825. For this reason, the Court is unpersuaded by defendant's argument that the proposed classes are overbroad because they include individuals who were not deceived by the Quote, due to their specialized knowledge, or because they learned of the Quote's alleged deceptiveness before purchasing a Bumbo Seat. There is no basis to believe that there are a "great many" of these individuals.

7

Plaintiff urges the Court that in the event it determines her proposed classes are overbroad, it should not deny her motion but instead should allow her the opportunity to amend the class definitions to correct any overbreadth. In a footnote, she sets out the following alternative proposed nationwide class: "All consumers in each of the 50 states and the District of Columbia who visited www.bumbo.com, read the Quote, and subsequently purchased the Bumbo Floor Seat within the applicable statute of limitations of the respective Class States, for personal use until the date Defendant removed the quote from www.bumbo.com." (Pl.'s Reply at 4 n.1.) Plaintiff cites *Messner*, 669 F.3d at 826 n.15, for the proposition that, in circumstances "involving minor overbreadth problems that do not call into question the validity of the class as a whole, the better course is not to deny class certification entirely but to amend the class definition as needed to correct for the overbreadth." However, this case does not involve a "minor" overbreadth problem. Furthermore, as discussed below, even if the Court were to treat plaintiff's motion as one for certification based on the revised class definition, plaintiff fails to meet her burden of establishing the conditions of Rule 23(b) on which she relies.[8]

**B.     Rule 23(b)(2)**

Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Plaintiff argues that the Court should certify a class under Rule 23(b)(2) because she and the

---

[8]Because plaintiff's failure to make these showings is dispositive, and for judicial economy, the Court will not discuss the Rule 23(a) requirements, except to say generally that plaintiff's revised class definition, as applied to a multi-state or Illinois class, appears to clear the numerosity, commonality, and adequacy-of-representation hurdles, but typicality presents a closer question.

8

class complain of a standard and uniform deceptive practice and seek an injunction to prohibit Bumbo from using the Quote on its website and in other marketing and advertising materials.

The Court finds that this case is not appropriate for class certification under Rule 23(b)(2), for two reasons. The first is the mootness of plaintiff's request for injunctive relief. The parties have stipulated that the Quote was removed from Bumbo's website at some point after the end of the proposed class period. (Stipulated Facts Regarding Class Certification ¶ 11.) Moreover, Bumbo submits the declaration of its CEO, Johan Buitendag, who states that the Quote was not central to Bumbo's marketing of the Bumbo Seat and that Bumbo "has no intention of using" the Quote for any future marketing. (ECF No. 88-1, Decl. of Johan Buitendag ¶ 8.) Plaintiff correctly points out that the voluntary cessation of conduct does not necessarily moot a request for injunctive relief, and that rather, "the court must decide whether the complained-of conduct may be resumed," *Nelson v. Miller*, 570 F.3d 868, 882 (7th Cir. 2009) (internal quotation marks and citation omitted). To make this decision, the court should consider whether "there exists some cognizable danger of recurrent violation, something more than [a] mere possibility." *Milwaukee Police Ass'n v. Jones*, 192 F.3d 742, 748 (7th Cir. 1999). Bumbo submits evidence that it does not intend to use the Quote in the future, and plaintiff submits no evidence to contradict Buitendag or show that there is some danger that Bumbo will ever again use the Quote (or a similar representation) to advertise the Bumbo Seat. Plaintiff discounts Buitendag's declaration as "self-serving,"[9] but "[m]ost affidavits are self-serving, as is most testimony," *Wilson v. McRae's, Inc.*, 413 F.3d 692, 694 (7th Cir. 2005), and the mere self-serving nature of the declaration does not permit the Court to discount it, *see id.* "[T]he fact that

---

[9] Plaintiff also says that the declaration is "ambiguous" and "contradictory," (Pl.'s Reply at 12), but it is not evident how, and plaintiff fails to develop the argument.

it is 'theoretically possible' that the defendant will resume the allegedly unlawful conduct after the litigation's conclusion does not defeat mootness where 'that possibility is supported only by speculation and not evidence.'" *Lipton v. Chattem, Inc.*, 289 F.R.D. 456, 461 (N.D. Ill. 2013) (quoting *Nelson*, 570 F.3d at 882).

Even if plaintiff's request for injunctive relief were not moot, there is a another reason why this is not a proper Rule 23(b)(2) suit. "Colloquially, 23(b)(2) is the appropriate rule to enlist when the plaintiffs' primary goal is not monetary relief, but rather to require the defendant to do or not do something that would benefit the whole class." *Chi. Teachers Union, Local No. 1 v. Bd. of Educ.*, 797 F.3d 426, 441 (7th Cir. 2015). "[A] 23(b)(2) class cannot seek money damages unless the monetary relief is incidental to the injunctive or declaratory relief." *Id.* at 443. "Put another way, Rule 23(b)(2) certification is proper only where 'injunctive or declaratory relief is the predominant remedy requested for class members.'" *Lipton*, 289 F.R.D. at 461 (quoting *Gates v. Towery*, No. 04 C 2155, 2004 WL 2583905, at *8 (N.D. Ill. Nov. 10, 2004)). Plaintiff asserts that injunctive relief is the predominant remedy she requests. The Court disagrees. As discussed above, plaintiff seeks to enjoin conduct that ceased after this suit was filed in 2015. Furthermore, the second amended complaint alleges that the matter in controversy exceeds $5 million, and plaintiff seeks compensatory damages, treble damages, and punitive damages. (Second Am. Nationwide Class Action Compl. at 2, 23, 27.) And although plaintiff contends that the computation of putative class members' monetary awards would be "mechanical" because the price of the Bumbo Seat ranged from $34.00 to $40.00, (Pl.'s Reply at

11), she does not develop that argument or respond to defendant's persuasive discussion regarding why individualized damage calculations might be required.[10]

## C. Rule 23(b)(3)

"Rule 23(b)(3) permits class certification only if the questions of law or fact common to class members 'predominate' over questions that are individual to members of the class." *Messner*, 669 F.3d at 814. While similar to Rule 23(a)'s commonality requirement, which is satisfied when "the same conduct or practice by the same defendant [such as deceptive marketing] gives rise to the same kind of claims from all class members," *Suchanek*, 764 F.3d at 756, and its typicality requirement, which is satisfied when the named plaintiff's claim "arises from the same event or practice or course of conduct that gives rise to the claims of other class members and is based on the same legal theory," *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009) (brackets and ellipsis omitted), "the predominance criterion is far more demanding," *Messner*, 669 F.3d at 814.

"Analysis of predominance under Rule 23(b)(3) 'begins, of course, with the elements of the underlying cause of action.'" *Id.* at 815 (quoting *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011)). "The elements of a claim under the ICFA are: (1) a deceptive act or practice by the defendant; (2) the defendant intended that the plaintiff rely on the deception; (3) the deception occurred in the course of conduct involving trade or commerce; (4) the plaintiff suffered actual damage; and (5) the damage was proximately caused by the

---

[10]It is also likely that plaintiff does not have standing to seek injunctive relief on behalf of a consumer class. This court is among those in this district who have ruled that a plaintiff who is a former customer and who provides no concrete basis to conclude that in the future she will purchase the product at issue lacks standing to pursue injunctive relief on behalf of a consumer class because she is unlikely to suffer future harm. *See Ulrich v. Probalance, Inc.*, No. 16 C 10488, 2017 WL 3581183, at *7 (N.D. Ill. Aug. 18, 2017) (citing cases).

deception." *Geschke v. Air Force Ass'n*, 425 F.3d 337, 345 (7th Cir. 2005) (citing *Oliveira v. Amoco Oil Co.*, 776 N.E.2d 151, 160 (Ill. 2002)). To be actionable under the ICFA, a representation must be "material," which is established by applying an objective standard. *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 595 (Ill. 1996). Although reliance on an alleged misrepresentation is not an element of statutory consumer fraud, a plaintiff suing under the statute must show that the alleged fraud proximately caused her injury. *Id.* at 593. To establish proximate causation under the ICFA, a plaintiff must show that she was, in some manner, deceived by the alleged misrepresentation. *Momient v. Nw. Collectors, Inc.*, 666 F. App'x 531, 537 (7th Cir. 2016) (citing *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 861 (Ill. 2005)).[11]

Plaintiff asserts that her and the class's claims "all derive from their viewing of the Quote prior to purchasing" a Bumbo Seat. (Pl.'s Reply at 13.) That statement could be true only as to the narrowed class definition, which requires putative class members to have read the Quote, so the Court will discuss predominance in the context of the revised definition. Plaintiff contends that common issues "undeniably" predominate here, and she identifies two common issues: "whether the Quote misrepresents the Bumbo Floor Seat's benefits and is therefore false, fraudulent, untruthful, misleading and/or deceptive" and "whether the misrepresentations contained in the Quote are likely to deceive a reasonable consumer." (Pl.'s Mem. Supp. Class Certification at 12.) While plaintiff correctly identifies common issues, she does not develop any argument that these issues predominate over questions affecting only individual members.

---

[11] While plaintiff's unjust-enrichment claim does not necessarily require proof of loss or damages, it does require proof of a detriment, and, "'significantly, a connection between the detriment and the defendant's retention of the benefit.'" *Lipton*, 289 F.R.D. at 460 (quoting *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 519 (7th Cir. 2011)).

Plaintiff further states that she "will introduce competent, expert testimony" that the Bumbo Seat "interferes with the important and natural progression of child development." (*Id.*) She does not submit any such expert testimony, though, and simply says that such testimony will be "similar to that of Mary Dollard Weck," a physical therapist at Lurie Children's Hospital, who disputed the claims in the Quote in comments she provided for a *Chicago Tribune* article, which plaintiff attaches to her memorandum. (ECF No. 75-7, Julie Deardorff, *Therapists See No Developmental Benefits from Seats*, Chi. Trib., Mar. 15, 2012.)

Bumbo argues that there are significant and predominant individual issues with respect to causation and damages, among them why a putative class member purchased the Bumbo Seat and whether and how the purchaser suffered damage. Plaintiff concedes that the ICFA requires a showing of proximate causation, but asserts that "such inquiry is irrelevant to class certification" because the fact that many of the proposed class members "may be unable to show proximate causation as required by the ICFA is an argument for certifying the class and then entering a judgment that would largely exonerate Defendant. It is not an argument for refusing to certify the class." (Pl.'s Mem. Supp. Mot. Class Certification at 14; Pl.'s Reply at 13-14 (citing, *inter alia*, *Suchanek*, 764 F.3d at 758).)

In *Suchanek*, which was a class action brought by plaintiffs who alleged that a coffee manufacturer violated state consumer-fraud statutes and unjust enrichment laws by fraudulently marketing its coffee pods, the Court of Appeals concluded that the district court applied too strict a test when it considered whether common questions predominated over individual ones. Although the Court observed that "[e]very consumer fraud case involves individual elements of reliance or causation" and that "100% commonality" is not required for certification, 764 F.3d at 759, the Court did not say that the individual nature of issues related to proximate causation is

13

"irrelevant" to class certification. Rather, the Court set out an approach for district courts to follow when determining whether to certify a consumer-fraud class under Rule 23(b)(3). *Id.* at 760-61. Although plaintiff repeatedly cites *Suchanek*, she fails to discuss this approach or the factors the Court of Appeals outlined therein. The first step is a "rigorous analysis into whether the plaintiffs' damages are susceptible of measurement across the entire class." *Id.* at 760 (internal quotation marks and citation omitted); *see also Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1179 (11th Cir. 2010) ("Individualized damages issues are of course least likely to defeat predominance where damages can be computed according to some formula, statistical analysis, or other easy or essentially mechanical methods.") (internal quotation marks and citation omitted). Plaintiff does not address this issue in her opening brief, nor does she present any pertinent evidence. She also gives the issue short shrift in her reply brief by failing to discuss a damages measurement except, as noted above, to make a cursory Rule 23(b)(2) argument that the "damages are formulaic" due to the price of the Bumbo Seat. (Pl.'s Reply at 11.) But she does not advance any damages theory or methodology or even superficially offer a way of measuring damages.

The next steps in the *Suchanek* analysis are to assess "the difficulty and complexity of the class-wide issues as compared with the individual issues" and "whether the class allegations are satisfied through evidentiary proof." 764 F.3d at 760-61 (internal quotation marks, brackets, and citation omitted). "Such proof might include, for example, survey or other evidence suggesting the relevant common traits of the class members, expert testimony supporting the classwide allegations, or analysis of the relative costs of prosecuting the class and individual issues in the case." *Id.* at 761. Plaintiff attempts to brush aside concerns about individual issues by arguing that "[t]here is no question that the Quote is material such that a class-wide inference of

14

deception in some manner is appropriate because, absent the Quote's developmental benefits representations, consumers would have had no reason to purchase the Bumbo Floor Seat." (Pl.'s Mem. Supp. Mot. at 13.) Plaintiff continues: "The Bumbo Floor Seat is marketed for only one purpose—to provide developmental benefits, which it fails to provide." (*Id.*) Plaintiff provides no evidence to support these assertions about the uses and purpose of the Bumbo Seat, which are belied by the nature of the product and the evidence defendant submits. Buitendag states in his declaration that the purpose of the Bumbo Seat for which it is "primarily marketed and sold" is "to allow infants to sit in an upright position while they are still too young to do so on their own without assistance. This allows caregivers to feed, play with, read to, and otherwise interact with the children, while simultaneously freeing up their hands." (Buitendag Decl. ¶ 3.) The web page for the Bumbo Seat stated at the relevant time: "The Bumbo Baby Seat was invented by a design engineer grandpa to seat young babies who can't sit up by themselves yet." (ECF No. 88-5.)

Plaintiff testified at her deposition that reading the Quote "sway[ed] [her] into buying the [Bumbo Seat] because it offered a benefit," (ECF No. 75-3, Dep. of Elizabeth Clark Shambaugh at 59), but she does not submit any evidence to show that the Quote was material to any portion of Bumbo purchasers and thus caused them to suffer damages. The most straightforward way for plaintiff to have done so would have been to use survey evidence showing that consumers understood the Quote in the way that plaintiff did and bought the Bumbo Seat as a result of that understanding. (It is significant that the Bumbo Seat was not sold through Bumbo's web site, so a consumer would not have viewed the Quote and purchased the seat simultaneously.) Defendant, on the other hand, submits a selection of Bumbo Seat online product reviews in which purchasers indicated that they had purchased the Bumbo Seat for various reasons,

including that it would allow them to feed a child more easily, play with a child "face to face," and put a child down occasionally to accomplish household tasks; allow a child who has developed a flat head to remain upright; and allow a child who does not like to lie down to be in a different position. (ECF No. 88-7.)

This case is similar to *Langendorf v. Skinnygirl Cocktails, LLC*, 306 F.R.D. 574 (N.D. Ill. 2014), where the plaintiff alleged that the defendants had fraudulently labeled and marketed their pre-mixed alcoholic beverage as "all natural" when it contained the non-natural preservative sodium benzoate. The district court denied plaintiff's motion for class certification under Rule 23(b)(3) and held that plaintiff failed to demonstrate that common issues predominate over individual ones, reasoning as follows:

> That common issues predominate over individual ones is a requirement for class certification, and Langendorf has the burden of demonstrating it by a preponderance of the evidence—attorney assertions do not suffice.
> . . . Langendorf argues that "the fact that a defendant may be able to defeat the showing of causation as to a few individual class members does not transform the common question into a multitude of individual ones; plaintiffs satisfy their burden of showing causation as to each by showing materiality as to all." But even if that were a correct statement of the law (for these claims, in this Circuit), Langendorf has produced no *evidence* to show that causation will be defeated only as to "a few" class members; in other words, she has not demonstrated the materiality of the "all natural" text. As defendants point out, such a showing could have been attempted through survey evidence. Langendorf submitted no evidence, survey or otherwise, to show what portion of purchasers likely relied on the "all natural" text, or the degree to which the label "all natural" had a tendency to influence the decision to purchase the product. She has therefore failed to carry her burden to show that common issues predominate. *See Am. Honda Motor Co., Inc. v. Allen*, 600 F.3d 813, 818-19 (7th Cir. 2010) (where plaintiffs' proffered expert testimony was excluded, they were "left with too little to satisfy Rule 23(b)(3)'s predominance prong").
> To be sure, individual issues will almost always be present in consumer fraud actions, and the Seventh Circuit recently stated that it is an error of law to apply a rigid rule that "individual issues necessarily predominate in cases requiring individual subjective inquiries into causality."• *Suchanek*, 764 F.3d at 759; *see also Pella Corp. v. Saltzman*, 606 F.3d 391, 393 (7th Cir. 2010) ("While consumer fraud class actions present problems that courts must carefully consider

before granting certification, there is not and should not be a rule that they never can be certified."). I do not apply a rule that individual issues necessarily predominate in this case, but I do find that Langendorf, who has the burden of proof, has not shown otherwise. The court's decision in *Suchanek* is illustrative.

      The *Suchanek* defendants marketed and sold single-cup coffee pods for use with the popular Keurig-brand coffee machines. But unlike Keurig-brand pods, the defendants' product contained almost exclusively instant coffee. Recognizing that their target consumers disfavor instant coffee, the defendants intentionally concealed the nature of their product. Further, they charged three-to-four times as much for their product as typical instant coffee, so "only a very price insensitive consumer, or one who was misled," would buy it. *Id.* at 754. Therefore, unlike Langendorf, the *Suchanek* plaintiff produced evidence tending to show the materiality of the misleading marketing. Because few (if any) informed purchasers would have bought the product, the court stated that "if the class prevails on the common issue, it would be a straightforward matter for each purchaser to present her evidence on reliance and causation. Indeed, if the class prevails, the case would probably be quickly settled."• *Id.* at 760 (internal marks omitted).

      The record before the *Suchanek* court was quite different than the record here: "From the record amassed for the class certification decision, it is apparent that this is not a case where few, if any, of the putative class members share the named representative's grievance against the defendant. If it were, things would be different."• *Id.* at 758. Langendorf has not amassed any such record: she offers no evidence concerning the portion of the proposed class that did not know about the presence of a small quantity of sodium benzoate and would not have purchased the product (or paid as much as they did) had they known. While the *Suchanek* plaintiff may have carried her burden of showing that common issues predominate, Langendorf has not.

306 F.R.D. at 582-83 (some citations and footnote omitted). The court also distinguished cases in which class certification had been granted where the plaintiff's theory was that the defendant's product was completely bogus and worthless, such that no informed consumer would purchase it for any reason, from Langendorf's case, where her theory was not that the Skinnygirl beverage was worthless. *Id.* at 583 n.4.

The *Langendorf* analysis applies equally here; Clark is in the same position as Langendorf in that she relies on bare-bones assertions by counsel instead of evidentiary proof relevant to predominance. Plaintiff's theory is not that the Bumbo Seat cannot be used as a baby

17

seat and is thus worthless; rather, it is that the product does not provide the benefits described in the Quote. This appears to be a case where few of the putative class members may share that grievance. In any event, plaintiff provides no evidence to that effect.[12] Her treatment of the predominance requirement is superficial, and the Court agrees with defendant that plaintiff fails to meet her burden under Rule 23(b)(3).[13]

## CONCLUSION

Plaintiff's motion for class certification [75] is denied. Defendant's motion for leave to file a surreply [93] is granted. A status hearing is set for September 14, 2017 at 9:30 a.m.

**SO ORDERED.**                                     **ENTERED:    August 28, 2017**

**JORGE L. ALONSO**
**United States District Judge**

---

[12]The evidence submitted by plaintiff in support of her motion for class certification is limited to her interrogatory responses; her deposition testimony; defendant's responses to certain discovery requests; the parties' stipulations to basic facts; information about the number of visitors and page visits to defendant's website during the relevant time frame; background information about plaintiff's counsel; and the *Chicago Tribune* article mentioned above.

[13]Given this conclusion, the Court need not discuss whether plaintiff has shown that the class action device is the superior method of adjudication in this case. The Court will note, however, that it is not persuaded by defendant's argument that there are "serious problems" with the manageability of the proposed classes in light of its lack of records showing who purchased the Bumbo Seat and plaintiff's failure to provide an alternative means of identifying those individuals. The Court has discretion to "rely on self-identifying affidavits, subject as needed to audits and verification procedures and challenges, to identify class members." *Mullins*, 795 F.3d at 669.